Dan WOLKEN and Fred Wolken,
Plaintiffs and Appellees,

v.

Leo ERCK, Defendant and Appellant.

No. 15587.

Supreme Court of South Dakota.

Argued Oct. 6, 1987.

Decided March 23, 1988.

A.P. Fuller of Amundson, Fuller & Delaney, Lead, for plaintiffs and appellees.

Donald R. Shultz and Jay C. Shultz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellant.

MORGAN, Justice.

Defendant and appellant, Leo Erck (Erck), appeals from a jury verdict in favor of plaintiffs and appellees, Fred Wolken and Dan Wolken (Wolkens or Fred and/or Dan), awarding Wolkens damages on their claim against Erck alleging violation of the Blue Sky laws. We affirm.

Erck, a licensed realtor in Rapid City, South Dakota, held exclusive listing agreements with Lawrence Ventling (Ventling) to sell unpatented mining claims belonging to Ventling Mining, Inc. (VMI). He also held an exclusive listing agreement with Fred for the sale of his ranch, located near Box Elder, South Dakota. Fred and his son, Dan, visited Erck's Rapid City office to check on the ranch listing. Conversation between Erck and Wolkens lead to a discussion of the mining claims and eventually to VMI, a gold mining operation.

There is a conflict in the evidence as to who first initiated the visits to the mine and whether Erck encouraged Wolkens' initial investment in the VMI operation. At any rate, at the VMI board of directors' meeting of February 24, 1982, Wolkens committed to two shares of stock at $12,000 each. They were *thereafter* elected as board members and Dan was also elected vice president of VMI. There is conflicting evidence as to whether Erck received a commission on the sale of this stock. On March 29, 1982, after Wolkens allegedly became active in the corporation, 8.33 additional shares were bought in Dan's name for $100,000. Shortly thereafter, VMI went broke and Ventling filed for bankruptcy. None of the stock of VMI has ever been registered with the Division of Securi-

ties under the provisions of SDCL ch. 47–31.

Wolkens commenced suit against Erck for recovery of the purchase price of their VMI stock under the provisions of SDCL 47–31–133, which provides, in pertinent part: "... and each underwriter, broker or agent who shall have participated or aided in ... making such sale, shall be jointly and severally liable to such purchaser[.]" In response, Erck raised the defenses of estoppel and in pari delicto.

Wolkens testified at trial that they had minimal control and participation in the corporation and were in fact thwarted in a takeover attempt. Erck, on the other hand, contends that one or both of the Wolkens were heavily involved in the management and policy decisions of the corporation and should therefore have been estopped from pleading violations of SDCL 47–31–9.

▬ Erck contends that the trial court erred in failing to rule, as a matter of law, that Wolkens were estopped from raising violations of SDCL 47–31–9 (Blue Sky law)* and in failing to rule, as a matter of law, that Wolkens were in pari delicto with Erck. The trial court submitted both questions to the jury on the basis that material issues of fact existed upon which reasonable minds could differ. The jury returned a verdict in favor of Wolkens for $24,000.

We first examine Erck's second defense of "in pari delicto." That Latin maxim translates: "In a case of equal or mutual fault ... the position of [defending party] is the better one." Black's Law Dictionary 711 (5th ed. 1979). Erck argues that both parties were equally at fault in the sale of the VMI stock, in violation of the Blue Sky laws. The trial court submitted the issue to the jury under instructions, none of which Erck complains of on appeal. The sole issue raised in this respect is the trial court's failure to determine as a matter of law that Wolkens were in pari delicto and direct a verdict against them.

"In pari delicto" is closely related to the "clean hands" doctrine. It is principally applied in contract cases. Its application in security fraud cases, however, has been somewhat limited by the courts.

Over the years, [in pari delicto] has proved simple enough in application in purely private disputes between private parties. However, the legislative adoption of comprehensive regulatory schemes, such as the federal securities laws, designed at least in part for the very purpose of aiding and protecting injured plaintiffs, has complicated matters.

Since these legislative enactments, the defense of in pari delicto can no longer be considered solely within the framework of traditional equity concepts. In addition to examining the relative culpability of the plaintiff, the courts must also ask whether the application of the doctrine would further the policies behind the federal securities laws, given the particular facts of the case. This additional inquiry has given pause, and the courts have allowed the defense only with caution.

*Weitzman v. Stein*, 436 F.Supp. 895, 905 (S.D.N.Y.1977).

In this case, the trial court did allow the case to go to the jury on the issue of in pari delicto. Wolkens have not chosen to take issue by filing a notice of review, so the viability of the claim is not before us. The issue, as presented by Erck, is that the trial court erred by failing to direct a verdict in his favor against Wolkens, denying their entire claim on the doctrine.

Erck argues that the participation by Wolkens in the management of the company, after the first stock purchase and continuing through the time of the second stock purchase, places them in pari delicto and precludes any recovery. Because Wolkens did not seek review, we do not need to comment on the affect of their

---

* SDCL 47–31–9 reads:

No securities except those exempted by §§ 47–31–67 to 47–31–81, inclusive, and those sold in a manner exempted by §§ 47–31–82 to 47–31–92, inclusive, shall be offered for sale or sold within the State of South Dakota unless or until such securities have been registered under this chapter.

participation in management on the second stock purchase, but it is obvious that the jury determined that while Erck's defense of in pari delicto was applicable to the second purchase, that was not the case with the first. With the latter determination we agree. Wolkens had committed themselves to the purchase of the first two shares before they were elected to the company board of directors and administrative office. There was certainly conflicting evidence as to their participation after that, but that is not before us.

In *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, 105 S.Ct. 2622, 2628, 86 L.Ed.2d 215, 224 (1985), the United States Supreme Court stated "that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to Commission action.'" (Citations omitted.) The Court determined that:

[A] private action for damages in these circumstances may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.

472 U.S. at 310–11, 105 S.Ct. at 2629, 86 L.Ed.2d at 224.

In our opinion, to suggest that one who engages in the act of selling unregistered stocks can escape liability to the purchaser by simply electing the purchaser to the board of directors of the corporation would interfere with the effective enforcement of the securities laws and the protection of the investment public. In the words of the *Bateman Eichler* Court:

We also believe that denying the in pari delicto defense in such circumstances will best promote the primary objective of the federal securities laws—protection of the investing public and the national economy through the promotion of 'a high standard of business ethics ...

in every facet of the securities industry.' (Citations omitted.)

472 U.S. at 315, 105 S.Ct. at 2631, 86 L.Ed. 2d at 227.

The *Bateman Eichler* Court considered what can be called a warranty situation in respect to suits on inside trading in securities and rejected it. The Court noted that some lower courts have reasoned that preclusion of in pari delicto places the plaintiff in a heads-I-win, tails-you-lose, position. If a stock tip is correct, "the tippee will reap illicit profits, while if the tip fails to yield the expected return, he can sue to recover damages." 427 U.S. at 318, 105 S.Ct. at 2633, 86 L.Ed.2d at 229. The *Bateman Eichler* Court found the enforceable warranty theory overstated and concluded that the public interest will more frequently be advanced if defrauded tippees are permitted to bring suit and expose illegal practices. The Court concluded "there is no warrant to giving corporate insiders and broker-dealers 'a license to defraud the investing public with little fear of prosecution.'" 427 U.S. at 319, 105 S.Ct. at 2633, 86 L.Ed. 2d at 230 *citing Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed. 2d 668 (1976). We find that logic persuasive and applicable to this situation with equal force.

■ We next examine Erck's estoppel argument, which is likewise based on the participation of Wolkens in corporate activities. Again, the trial court denied Erck's motion for directed verdict and submitted the issue to the jury under instructions which Erck does not question in this appeal.

It is again noteworthy that the federal courts have taken a special approach to the doctrine of estoppel where the controversy arises over security violations. In *Henderson v. Hayden, Stone Incorporated*, 461 F.2d 1069 (5th Cir.1972), the plaintiff sought recovery under 15 U.S.C.A. § 77*l*(1) (1971) for a sale of unregistered securities in violation of 15 U.S.C.A. § 77e (1971). Granted that there is some difference between the federal offense and the state offense in question here, we deem the purpose of the legislation, to require regis-

tration of stocks prior to sale, to be significantly identical so as to rely on the decision as precedent. The defendants in *Henderson* sought to set up an estoppel defense, urging that rescission can be denied for such violation if granting such relief would frustrate the purpose of the Securities Act, *citing Frost & Co. v. Coeur D'Alene Mines Corp.*, 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1941). But the circuit court of appeals panel rejected that argument. It agreed with the *Frost* rule, but distinguished the cases factually. It pointed out that one of the essential purposes of the Securities Act is to protect innocent purchasers of securities and acknowledged that plaintiff Henderson (whom they described as a sophisticated investor) was not the average innocent investor, but nevertheless determined that allowing him to recover would not frustrate the legislative purpose. It concluded:

> [T]he concomitant of the legislative purpose is affirmatively served here. Congress sought to encourage sellers of securities to register those securities prior to any sales or offers to sell. By allowing recoveries such as the one in this case, unregistered sales are discouraged.

461 F.2d at 1072.

It is clear from this record that Wolkens were not sophisticated investors, as was plaintiff Henderson. It further appears to us that this is not a case where the defense of estoppel should be allowed, at least as far as the first purchase of stock which was committed to before Wolkens had any purported executive involvement with the corporation.

In summation, we affirm the trial court on the issues presented.

WUEST, C.J., and MILLER and SABERS, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

This appeal pertains to the sale of unregistered securities in the State of South Dakota and is governed by SDCL ch. 47–31 of the South Dakota Codified Laws.

This Court has heretofore ruled on the intent of this chapter, expressing in *Hofer v. General Discount Corp.*, 86 S.D. 133, 139, 192 N.W.2d 718, 722 (1971), that "statutes governing the registration and sale of securities are remedial in nature and are designed to protect the unwary buyer and thus should be liberally construed to effect the purpose for which the statutes were adopted." Here, plaintiffs/Wolkens, as father/son team, purchased ten and one-third shares of VMI stock (stock in a gold mine) in March 1982 for a total purchase price of $124,000. After hearing all of the evidence in a hotly contested trial, the jury determined that plaintiffs were entitled to recover for only their first purchase of two shares for $24,000 purchased on March 11, 1982. So this jury ferreted out the facts. It is obvious that the jury placed great emphasis on a commitment to two shares of stock at $12,000 each as distinguished from 8.33 additional shares purchased for the sum of $100,000. Activity and participation in the management of this corporation of the Wolkens and their serving as corporate directors and officers evidently influenced this jury. For the record, the court entered a judgment for $24,000 (less an off-set) and, additionally, $16,755.36 in prejudgment interest and $4,500 in attorney fees.

Appellant protected the record by these procedures: he made a motion for directed verdict (denied) and a motion for judgment notwithstanding the verdict (also denied).

As the majority opinion points out, in essence, the question before this appellate body is: Did the trial court err, to rule *as a matter of law*, that appellees should be estopped from recovering or acted in pari delicto with appellant? It is extremely important, in these type of actions, to mention that the defenses of estoppel or acting in pari delicto are available depending upon the facts of each case. This principle is announced by many authorities and quite aptly in *Midwest Management Corp. v. Stephens*, 291 N.W.2d 896, 908 (Iowa 1980). *See also Winfred Farmers' Co. v. Smith*, 47 S.D. 498, 500, 199 N.W. 477, 477 (1924). I should mention that SDCL 47–31–133 had

not been enacted at the time of the *Winfred Farmers'* decision, but it is some general South Dakota authority on this subject.

Perhaps the "Wolkens were not sophisticated investors" as suggested by the majority opinion; nevertheless, I feel it incumbent to point out that the Wolken family made another appearance before us concerning the rescission of an offer and agreement to purchase a different gold mining operation. *Wolken v. Wade,* 406 N.W.2d 720 (S.D.1987).

In denying the motion for directed verdict on behalf of defendant Erck, the trial judge noted the conflicting evidence and spread upon the record his comments as to why he was denying the motion for directed verdict in most explicit and reasoned language, reflecting that the case boiled down to a credibility question and as to which witnesses the jurors were going to believe. This is the basic reason I have quoted the 1980 Iowa Supreme Court case. Instructing on the defenses of estoppel and in pari delicto, the trial judge gave the defendant a fair shot at his two major defenses, but, under the facts, the jury said they did not wash. Judge Grosshans' basic instructions on these two defenses are found in Instructions 1 through 26. The Court, very thoroughly, explained the defense of estoppel, and I note that it was the Wolkens (who prevailed) who objected thereto—not Erck/appellant. Judge Grosshans explained the doctrine of in pari delicto in Instruction 25; and, in Instruction 26, the jury was instructed on factors which they could consider as guidelines, instructing them that they were not to emphasize any one particular factor, but, rather, to weigh all of the factors in relationship to the evidence presented. Furthermore, the trial judge explained the differences in these two defenses. *See* collection of cases under Annot., 84 A.L.R.2d 479 (1962). Erck/appellant seemed to have no doubt that the instructions were a proper statement of the law; hence, it was an old story unfolding in the courtroom, namely: The jury had to apply the facts to the trial judge's instructions.

In sum, (1) this stock was not registered under SDCL ch. 47–31, (2) there was a sale under SDCL ch. 47–31, (3) Erck/appellant admits he participated and/or aided in the sale of the stock to Wolkens, and, finally, (4) SDCL 47–31–133 creates liability upon a broker who is actively involved in the purchase/sale of such unregistered securities.