COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-034-CV
  
   
WILLIAM 
H. DEAN AND MADELYN S. DEAN                           APPELLANTS
 
 V.
 
FRANK 
W. NEAL & ASSOCIATES, INC.,                                    APPELLEES
HBC 
ENGINEERING, INC., DAVID LEWIS
BUILDERS, 
INC., AND DAVID T. LEWIS, INDIVIDUALLY
 
  
------------
 
FROM 
THE 348TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        This 
construction defect case involves multiple summary judgments granted on 
limitations grounds. In three issues, William H. and Madelyn S. Dean contend 
that the trial court erred in granting summary judgments on their claims against 
appellees Frank W. Neal & Associates, Inc., HBC Engineering, Inc., David 
Lewis Builders, Inc., and David T. Lewis, individually, because the limitations 
period was tolled by application of the discovery rule and because the appellees 
are equitably estopped from asserting limitations as a result of their conduct. 
Because the Deans failed to raise a fact issue on the discovery rule and 
equitable estoppel, we affirm the summary judgments for all of the appellees on 
limitations grounds.
Background
        On 
November 10, 1995, the Deans entered into a contract with Nader Design Group 
(NDG) and David Lewis Builders, Inc. (DLBI) for the construction of a home, 
James Nader of NDG was the architect for the project, and DLBI was the builder. 
As part of the design process, the Deans’ architect hired Frank W. Neal & 
Associates, Inc., a structural engineering firm, to design the home’s 
foundation. When preparing the design, Neal used some information in a soils 
report that HBC Engineering, Inc., another engineering firm, prepared in 1994 
for a different architect. The soils report indicated a potential for movement 
in the soil below the house of approximately 2.1 inches. Consequently, Neal 
recommended that the house be designed with a suspended slab, or pier and beam, 
foundation. The Deans rejected this recommendation because it was too costly, 
and Neal designed a foundation that was slab-on-grade with some piers. According 
to Neal’s deposition testimony, he told Nader the new design would be less 
costly but not as good as a suspended slab. Construction of the home took place 
in 1996.
        During 
construction, Neal and the Deans noticed some cracks in the foundation. Neal did 
not think the foundation was structurally compromised at that point, so he 
recommended that the cracks in the garage be repaired with an epoxy patch and 
that a flexible bed be laid under the tile in the other parts of the house where 
cracking had occurred.[1]  There is no evidence 
that Neal’s recommendations were implemented, but construction was completed, 
and the Deans closed on the house in December 1996.
        After 
they moved in, the Deans noticed cracks in the garage and “various places” 
in the house. By October 1997, more cracks had appeared, and later that month 
Nader met with Neal, Lewis, and Ralph Barnes of HBC to discuss how to mitigate 
the problem. At this meeting, the participants discussed chemically injecting 
the soil underneath the house to stop potential movement related to moisture in 
the soil caused by groundwater. Mrs. Dean was aware of this meeting and its 
purpose. In her deposition, Mrs. Dean admitted that she knew there had been some 
movement as of October 1997, which is why chemically injecting the soil was 
considered.
        Between 
1998 and 2002, Nader met with various parties, including Neal and Barnes, 
regarding the home’s foundation. The Deans believed that some or all of the 
appellees would pay for any necessary repairs to the home’s foundation. But at 
a meeting on January 23, 2002, the Deans discovered that there was no general 
agreement among the appellees to pay for such repairs.
        The 
Deans filed suit against NDG, Neal, DLBI, Lewis, and HBC on January 28, 2002. 
They asserted negligence, breach of warranty, fraud, fraud-failure to disclose, 
fraud in a real estate action and fraud-false promise, DTPA, and breach of 
contract claims against the various parties. They later nonsuited NDG, Nader’s 
architectural firm.[2]   Neal, DLBI and 
Lewis, and HBC subsequently filed separate motions for summary judgment 
contending that all of the Deans’ claims were barred by the applicable 
statutes of limitations.[3]  The Deans filed a 
third amended petition alleging that the discovery rule applied to their claims 
and that the appellees were equitably estopped from asserting limitations 
because their conduct induced the Deans not to file suit. The trial court 
granted separate summary judgments in favor of each of the appellees.
Standard of Review
        A 
defendant who moves for summary judgment on the affirmative defense of 
limitations has the burden to conclusively establish the defense. KPMG Peat 
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 
1999). The defendant must, therefore, conclusively prove when the cause of 
action accrued. Id. Additionally, the defendant must negate the discovery 
rule, if it applies and has been pleaded or otherwise raised, by proving as a 
matter of law that there is no genuine issue of material fact about when the 
plaintiff discovered, or in the exercise of reasonable diligence should have 
discovered, the nature of its injury.  Id.  If the movant 
establishes that the statute of limitations bars the action, the nonmovant must 
then adduce summary judgment proof raising a fact issue in avoidance of the 
statute of limitations.  Id.
Discovery Rule
        The 
discovery rule is a limited exception to the statute of limitations. Computer 
Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996). The 
discovery rule is applied when the nature of the injury is inherently 
undiscoverable. Id. at 456. Thus, the discovery rule should be applied 
only when “it is difficult for the injured party to learn of the negligent act 
or omission.” Id. A cause of action accrues when the plaintiff knew or 
should have known of the wrongful injury. KPMG Peat Marwick, 988 S.W.2d 
at 749-50. A plaintiff need not know the full extent of the injury before 
limitations begins to run. Murphy v. Campbell, 964 S.W.2d 265, 273 (Tex. 
1997).
        Here, 
Mrs. Dean’s deposition testimony shows that the Deans first observed cracking 
in the garage in July 1996 while the house was under construction. In an 
affidavit attached to the Deans’ summary judgment responses, Mrs. Dean 
testified that after they moved into the house, they noticed “more minor 
problems” with cracking in the garage and “various places” in the house, 
but they were assured that “these were normal cosmetic cracks that would occur 
with settlement of the [r]esidence.” But there is no indication as to who 
assured them so. Lewis’s affidavit states that after construction of the home 
was completed, he received a letter from Mr. Dean indicating that there had been 
movement in the foundation. But he could not locate the original letter, and the 
Deans did not produce it. The evidence also shows that by October 1997, when 
Nader began to call meetings regarding the problem, the parties had begun 
investigating chemically injecting the soil to dry up the moisture level. 
According to Nader’s deposition testimony, the October 1997 meeting was called 
because the Deans noticed cracking in the dry wall in the house, indicating 
movement. And Mrs. Dean admitted that she was aware at that time that movement 
in the soil precipitated this investigation.
        Mrs. 
Dean’s affidavit testimony indicates that several repairs were made in 1997 
and 1998 and that in 1998 DLBI made repairs to the sheetrock. In his affidavit 
testimony, Lewis stated that after the October 1997 meeting, he sent one of his 
employees to the house to dig a hole in front of the slab so that the parties 
could inspect it. A January 27, 1998 memorandum written by Nader, which was 
copied to the Deans, says that in January, Nader conducted the third in a series 
of monthly meetings at the Deans’ house. The memorandum states that Pro 
Chemical conducted “experimental probes” in December 1997, and that same 
month, holes were dug in the garage floor. Nader indicates that Mrs. Dean 
reported to him on January 14, 1998 that water was present in one of the holes. 
Thus, the evidence shows that no later than December 1997 the Deans themselves 
were aware that soil movement was causing cracking in their home to the extent 
that testing and monitoring of the foundation was necessary.
        The 
Deans contend that they could not have discovered the soil movement that caused 
the foundation problems until August 1998, when they received a report by an 
engineer that concluded the soil under the house had expanded more than HBC 
originally predicted. The Deans say this report at least creates a fact issue as 
to whether they could have discovered the full extent of the problem before 
August 1998. Until they received the report, they thought the foundation 
problems were only minor and could be repaired cosmetically. Mrs. Dean’s 
summary judgment affidavit states that she “realized the foundation needed 
repairs” when she read the report. But the Texas Supreme Court tells us that
   
the discovery rule does not linger until a claimant learns of actual causes and 
possible cures. Instead, it tolls limitations only until a claimant learns of a 
wrongful injury. Thereafter, the limitations clock is running, even if the 
claimant does not yet know:
   
• 
the specific cause of the injury;
  
• 
the party responsible for it;
  
• 
the full extent of it; or
  
• 
the chances of avoiding it.
  
 
PPG 
Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 146 S.W.3d 79, 
93-94 (Tex. 2004) (footnotes omitted). The summary judgment evidence shows that 
the Deans knew there was some cracking in the house and, thus, movement in the 
foundation in 1996 and 1997; they just did not know the extent of the work or 
expense necessary to repair it. Moreover, Nader testified in his deposition that 
in October 1997, when the parties first began meeting to address these very 
concerns, the Deans could have hired an engineer to do the same type of 
engineering report that they eventually received in August 1998. In addition, 
the summary judgment evidence supports the conclusion that Nader was acting as 
the Deans’ agent with regard to the investigation of the cause of the cracks 
in the home’s foundation;[4] thus, Nader’s 
knowledge of the foundation problems can be imputed to the Deans. See Gibson 
v. Bostick Roofing & Sheet Metal Co., 148 S.W.3d 482, 491 (Tex. 
App.—El Paso 2004, no pet.).   According to Lewis’s affidavit, the 
participants at the October 1997 meeting discussed that there was some movement 
in the foundation of the Deans’ home.  Thus, the evidence shows that 
Nader was aware of such movement as early as October 1997.  Accordingly, 
the evidence shows that the Deans knew or should have known of the injury to 
their home no later than October 1997.  Therefore, the statute of 
limitations began to run at that time so that by the time the Deans filed suit 
in January 2002, the limitations period had expired on all of their claims 
against the appellees.
Equitable Estoppel
        The 
Deans also contend that they raised a fact issue as to whether the appellees 
were equitably estopped from asserting limitations. The Deans contend that the 
appellees’ conduct induced them to believe that the appellees would pay for 
any necessary repairs to the home’s foundation. The doctrine of equitable 
estoppel requires (1) a false representation or concealment of material facts; 
(2) made with knowledge, actual or constructive, of those facts; (3) with the 
intention that it should be acted on; (4) to a party without knowledge or means 
of obtaining knowledge of the facts; (5) who detrimentally relies on the 
representations. Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 
962 S.W.2d 507, 515-16 (Tex. 1998). Estoppel in avoidance of limitations may be 
invoked in two ways: either a potential defendant conceals facts that are 
necessary for the plaintiff to know he has a cause of action or the defendant 
engages in conduct that induces the plaintiff to forego a timely suit regarding 
a cause of action that the plaintiff knew existed. Rendon v. Roman Catholic 
Diocese of Amarillo, 60 S.W.3d 389, 391 (Tex. App.—Amarillo 2001, pet. 
denied). The Deans contend that the appellees engaged in the latter.
        In 
order for the Deans to raise a fact issue on their estoppel by conduct claim, 
they must have presented some evidence that the appellees’ conduct 
affirmatively induced them into delaying suit beyond the limitations period, 
unmixed with any want of diligence on their part. See id.; Ladd v. 
Knowles, 505 S.W.2d 662, 669 (Tex. App.—Amarillo 1974, writ ref’d n.r.e.). 
“Implicit in this test are the requirements that the plaintiffs knew they had 
a cause of action, that the cause of action had accrued at the time the 
inducement occurred, and that their initial and continued reliance upon the 
original inducement was reasonable.” Rendon, 60 S.W.3d at 391. A 
plaintiff may not “blindly rel[y] upon a situation as being what it seemed 
rather than as being what it in reality was.” Leonard v. Eskew, 731 
S.W.2d 124, 129 (Tex. App.—Austin 1987, writ ref’d n.r.e.) (op. on reh’g).
        According 
to Mrs. Dean’s affidavit, she did not seek legal counsel between August 1998 
and December 2001
   
based upon: (i) the numerous meetings between the Architect and other engineers 
and contractors; (ii) the work activity performed at the Residence to study the 
problem; (iii) the estimates for the repairs generated by Extra Mile 
Corporation; (iv) [her] understanding that once a repair plan was agreed upon, 
repairs would be made to the foundation at no cost to Mr. Dean and [her]; and 
(v) [her] respect and trust of the Architect and Builder. If the meetings or 
work would have stopped, or it was communicated to [her] that [she and] Mr. Dean 
. . . were required to pay for some or all of the repairs to the foundation, 
[she] would have sought legal advice and filed suit, if that was necessary.
  
        The 
thrust of the Deans’ assertions that they raised a fact issue on equitable 
estoppel is that none of the appellees ever told the Deans that they would not 
pay for any and all necessary foundation repairs—not that any of the appellees 
affirmatively told the Deans they would pay for such repairs—and that that 
silence, along with the summary judgment evidence showing that the appellees had 
met about the foundation problem, hired professionals to investigate the source 
of the problem and provide price estimates for necessary repairs, and made at 
least some attempts to repair damage at no cost to the Deans, induced the Deans 
to forego filing suit until after the applicable limitations periods had 
expired. The Deans do not claim that any appellee made any affirmative 
misrepresentation to prevent them from filing suit.
        However, 
the Deans specifically point to the following evidence to support their 
assertions:
        •      letters 
from Nader to the Deans informing them about his site checks at the house, the 
recommendation of the engineer who performed the 1998 site assessment, and the 
“plan of action for the project”;[5]
        •      a 
December 15, 1999 letter from Nader to Timothy Potvin, Senior Claims Examiner 
for Lexington Insurance, Nader’s insurer, which states,
   
As you remember from the first mitigation project that was accomplished last 
year, we have exceeded our deductible for this claim. We have forwarded copies 
of this proposal to . . . Neal . . . and . . . HBC for their review. I have 
requested that the costs for this project be shared as was done on the earlier 
work with which you are familiar. If you concur with our plan for this project, 
I will proceed to have an attorney negotiate a settlement agreement that might 
encompass release of all claims upon completion of this project and the 
following cosmetic repairs, which have not been estimated.[6]

        •      a 
copy of what appears to be a check stub from Neal with the date “1-29-99,” 
the amount of “$3,000.00,” and “Dean residence” written on it, and a 
January 20, 1999 check request for $3,000 from Barnes, which appears to be on an 
HBC form, that says it is to NDG for “part of an agreement to mitigate 
movement [in] a house slab” and a letter to Nader stating the check is 
enclosed pursuant to his “January 13, 1999 transmitttal”;
        •      references 
in Mrs. Dean’s affidavit to letters from Nader (1) to the Deans regarding a 
plan that could be used to obtain pricing from contractors, (2) to Extra Mile 
Construction enclosing a floor plan of the property, project boundary, and 
structural drawings, stating, “We would like to begin this project sometime 
after the first of the year,” and (3) to Potvin dated March 2, 2001 that 
Dean’s affidavit says “further confirmed to us that the [appellees] had 
reached an agreement on a repair plan and that their insurance companies were 
aware of the plan and would assist in repairs”;[7]
        •      a 
copy of a May 22, 2001 letter from Nader to James Schwartz, who the Deans 
contend is Lexington’s attorney, stating that a meeting is to be held among 
the parties and that the purpose of the meeting is “to come to an agreement on 
determining the success of the proposed project and its ramifications toward the 
conclusion of this matter”;
        •      allegations 
in Mrs. Dean’s affidavit that Capshaw, HBC’s attorney, said at a June 2001 
meeting that the insurance carriers wanted a commitment that they would be 
writing a check for an amount that would repair all of the problems and that he 
advocated releasing the original design team and letting the insurance carriers 
pay the new people to solve the problems; and
        •      an 
August 23, 2001 letter from Nader stating that he had reviewed a design plan 
Mrs. Dean gave him, expressing concerns about issues that might be encountered 
executing that plan, and stating, “Otherwise, it looks as though you have a 
plan with which to proceed. Let us know if there is anything else we can do to 
help move the process along.”
        Although 
this evidence suggests that there may have been an agreement among Nader, Neal, 
and HBC to undertake or to pay for some repairs to the residence, there is no 
evidence that the Deans were personally aware of any specific payments from Neal 
or HBC or that they were aware of any specific agreement among the appellees to 
pay for foundation repair to the home. Moreover, although there is some evidence 
that Nader was acting as an agent for the Deans, there is no evidence that Nader 
was acting as agent for any of the appellees; thus, we do not believe that 
Nader’s letters to the Deans regarding plans for “the project” raise a 
fact issue as to whether the appellees’ conduct estopped them from asserting 
limitations.
        The 
rest of the evidence pointed to by the Deans raises a fact issue only as to 
whether HBC and Nader sought coverage from their insurance carriers for the 
damages now claimed by the Deans. Although Nader’s 2001 letter to Schwartz, 
the attorney for Nader’s insurance carrier, states that “the parties” were 
to meet to discuss an agreement on the project, it does not state who the 
“parties” are, and there is no mention of Neal or Lewis and DLBI by name. 
Nor is there any reference to their attorneys. But Nader’s 1999 letter to 
Potvin, an adjuster for Nader’s insurance carrier, indicates that Nader sought 
coverage regarding the foundation problems. And in her affidavit, Mrs. Dean 
references participation in a meeting by Capshaw, HBC’s attorney, and his 
statements about the conditions on which the insurance companies[8] would settle. Thus, we conclude the evidence raises a fact 
issue only as to whether Nader and HBC sought insurance coverage for the claim. 
The statement in Mrs. Dean’s affidavit that references a 2001 letter from 
Nader to Potvin and avers that it “further confirmed . . . that the 
[appellees] had reached an agreement on a repair plan and that their insurance 
companies were aware of the plan and would assist in repairs,” standing alone, 
is conclusory and, thus, not proper summary judgment evidence. See Seaway 
Prods. Pipeline Co. v. Hanley, 153 S.W.3d 643, 653-54 (Tex. App.—Fort 
Worth 2004, no pet.).
        Thus, 
the summary judgment evidence shows two courses of conduct by the appellees that 
the Deans rely on: initial attempts to repair the foundation by Nader and the 
appellees, and attempts by Nader and HBC to have insurance companies pay for the 
more extensive repairs. We do not believe this evidence raises a fact issue on 
the Deans’ equitable estoppel avoidance to appellees’ limitations defense.
        An 
unsuccessful effort to make repairs does not toll the statute of limitations for 
purposes of determining when a cause of action accrued. See Pako Corp. v. 
Thomas, 855 S.W.2d 215, 219 (Tex. App.—Tyler 1993, no writ); see also 
Muss v. Mercedes-Benz of N. Am., Inc., 734 S.W.2d 155, 159-60 (Tex. 
App.—Dallas 1987, writ ref’d n.r.e.) (applying same rule to equitable 
estoppel case, but relying on case analyzing when cause of action accrued). And 
we have not found any cases in which the mere making of repairs, without more, 
estopped a defendant from asserting limitations. See, e.g., Gibson v. John D. 
Campbell & Co., 624 S.W.2d 728, 730, 732-33 (Tex. App.—Fort Worth 
1981, no writ) (holding that builder was estopped from asserting limitations 
when builder made initial repair to home and assured homeowner problem was 
repaired and, after homeowner discovered foundation problems, repeatedly assured 
homeowner that repairs would be made, sent agent to home to take out ruined 
carpet and floorboards, and offered to pay for forty percent of cost of 
replacement carpet). We believe such a rule would discourage parties providing 
goods and services from extending warranties and attempting to repair minor 
problems without first conducting an extensive investigation to determine 
liability. Thus, we conclude that appellees’ attempts to make initial repairs 
to the residence do not raise a fact issue as to equitable estoppel.
        Further, 
absent fraud or bad faith, statements made during settlement negotiations do not 
waive a defendant’s right to assert limitations. Compare Lockard v. Deitch, 
855 S.W.2d 104, 105-06 (Tex. App.—Corpus Christi 1993, no writ) (holding 
statement in letter from defendant’s insurance carrier to plaintiff stating, 
“Once you have the final specials and medical reports to submit to us for 
evaluation, we will try to work towards a settlement with you,” did not raise 
fact issue on plaintiff’s equitable estoppel claim) with Frank v. Bradshaw, 
920 S.W.2d 699, 702-03 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding 
that insurance adjuster’s statement to plaintiffs that if they sent him their 
bills, he would pay them, raised a fact issue as to whether defendant was 
estopped from asserting limitations). Thus, we do not believe that Nader’s and 
HBC’s seeking insurance coverage is conduct that could have reasonably induced 
the Deans into delaying suit. On the contrary, such conduct should have alerted 
the Deans that Nader and HBC thought the Deans’ claims were actionable.
        We 
do not wish to appear unsympathetic to the Deans. Their willingness to give 
appellees the opportunity to attempt a resolution of this matter without hastily 
resorting to litigation is admirable. But however admirable, the Deans’ 
reliance on the appellees’ conduct presented as summary judgment evidence does 
not support their equitable estoppel argument. That evidence indicates that the 
majority of the conduct relied upon by the Deans was attributable to Nader, 
rather than the appellees. It also indicates that Nader was acting as the 
Deans’ agent throughout the time the Deans allege they were induced into 
delaying their lawsuit.
        Viewing 
the evidence in the light most favorable to the Deans, we conclude that it does 
not raise a genuine issue of material fact on their assertion that the appellees 
are equitably estopped from asserting limitations. Thus, the trial court did not 
err in granting summary judgment as to all causes of action and as to all of the 
appellees on limitations grounds. We overrule the Deans’ first issue.
Conclusion
        Having 
determined that the trial court did not err in granting summary judgment for all 
of the appellees on limitations grounds,[9] we affirm 
the trial court’s summary judgments in favor of the appellees on the Deans’ 
claims.
  
                                                          TERRIE 
LIVINGSTON
                                                          JUSTICE
 
 
 
PANEL 
B:   LIVINGSTON, GARDNER, and MCCOY, JJ.
 
DELIVERED: 
May 19, 2005

 
NOTES
1. 
The laundry room, kitchen area, entry, and master bedroom.
2. 
The Deans never sued their architect, Nader, individually.
3. 
See Tex. Civ. Prac. & Rem. 
Code Ann. §§ 16.003 (two years), 16.004 (four years) (Vernon 2002).
4. 
In his deposition, Nader testified that the October 1997 meeting was called 
because the Deans “had noticed cracking in their floor slab and movement or -- 
or cracking in drywall that indicated that there might be movement of the 
foundation” and that they called him. Additionally, the summary 
judgment record indicates that Nader coordinated all of the meetings and 
investigations regarding the home’s foundation problems and obtained all plans 
and pricing for any proposed mitigation. In fact, the 1998 engineering 
report—which the Deans claim is the first indication they had that the soil 
had caused foundation movement—was addressed to Nader, and Nader admitted that 
he hired the engineer to prepare the report and paid his bills.
5. 
One of these letters, dated September 28, 1999, states that Ralph Barnes of HBC 
“is in the process of reviewing the attached site plan, which indicates the 
proposed location of 3 monitoring wells and 1 permanent bench mark. These items 
have been recommended by [the 1998 site assessment engineer] to monitor pre and 
post construction water levels. Ralph will help to develop the implementation of 
this element.”
6. 
There is no evidence that the Deans were copied with or otherwise informed about 
this letter or its contents.
7. 
These letters are not in the appellate record.
8. 
Mrs. Dean’s affidavit does not specify which insurance companies Capshaw was 
referring to.
9. 
Because we have determined that the trial court did not err in granting summary 
judgment on limitations grounds, we need not address the Deans’ second and 
third issues that contend the trial court erred in granting summary judgment on 
substantive grounds. See Tex. R. 
App. P. 47.1.