Alex D. **HENDERSON, III, Plaintiff-Appellant,**

v.

**HAYDEN, STONE INCORPORATED, et al., Defendants-Appellees.**

No. 71–2971.

United States Court of Appeals, Fifth Circuit.

June 2, 1972.

H. J. Frazier, Frazier, Tiballi & Schroeder, Ft. Lauderdale, Fla., Morgan, Carratt & O'Connor, Harry G. Carratt,

Fort Lauderdale, Fla., for plaintiff-appellant.

Smathers & Thompson, Miami, Fla., for Witt and Hayden, Stone.

Cromwell A. Anderson, Miami, Fla., Glenville Haldi, Atlanta, Ga., for Whittaker and Pope.

Thomas Tew, Jeffrey Allen Tew, Tew, Tew, Rozen & Murray, Miami, Fla., for Richard Perry.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The facts of this case and the proceedings in the lower court are adequately detailed in the memorandum opinion of the district court reproduced in part below. Because we differ with some of the legal conclusions to be drawn from these facts, we reverse in part and affirm in part.

This matter was tried by the Court on plaintiff [Alex Henderson, III]'s prayer for rescission of the contract he entered into on March 3, 1969, for the purchase of stock. The Court directed a verdict in favor of the defendants, Hayden, Stone Incorporated and Louis W. Witt, Jr., at the close of the plaintiff's case. The defendants now remaining are Richard Perry, Sam E. Whittaker and Bob E. L. Pope.

This Court has jurisdiction over the cause pursuant to the provisions of Title 15, United States Code, Section 77–v, known as the Securities Act of 1933. In his complaint, the plaintiff seeks rescission of the contract alleging that the sale of 45,000 shares of unregistered stock in Electro-Kinetics Corporation was in violation of Title 15, United States Code, Sections 77–e and 77–l and in violation of Chapter 517, Florida Statutes, 1967. These statutes regulate the sale of securities.

At the time of the transaction which is the subject of this suit, the defendant, Richard Perry, was employed as the Southeastern Regional Sales Manager of Hayden, Stone Incorporated. The defendant, Sam E. Whittaker, was a registered representative employed in the Jacksonville office of Hayden, Stone Incorporated. The defendant, Bob E. L. Pope, was not a registered representative, broker, dealer, or underwriter in the securities industry.

Sometime in late 1968, or early 1969, the defendants Pope and Whittaker entered into an agreement with the Electro-Kinetics Company. The exact details of the agreement cannot be deduced from the evidence presented; however, it is clear that the defendants agreed to raise capital for the company in exchange for shares of stock. Pope and Whittaker contacted the defendant Perry to assist them in raising the needed capital, $300,000.00. Pope and Whittaker had entered into at least one other "capital venture" involving a company named Adcom Metals and that venture had turned out quite successfully for all of the investing parties.

The plaintiff, Alex Henderson, III, is a Florida resident and was a customer of Hayden, Stone Incorporated. Perry had counseled with the plaintiff, Henderson, concerning a prior investment through Hayden, Stone and, therefore, was aware that Henderson was a very active and substantial investor.

In February, 1969, Perry contacted Henderson and, after several meetings, Henderson invested in the Electro-Kinetics venture. Henderson wrote a check on March 3, 1969, in the sum of $180,000.00. The check was payable to and deposited in the trust account of Peek, Whaley, Blackburn & Haldi, an Atlanta, Georgia law firm. Sometime thereafter, Henderson received a stock certificate indicating ownership of 45,000 shares of common stock in Electro-Kinetics. The shares of stock were not registered with the Securities Exchange Commission or the Florida Securities Commission.

The plaintiff testified that he was aware at the time of the transaction that the stock was not registered with either of the above named Commis-

sions. Henderson has an investment portfolio which amounts to several million dollars. He is "retired" and presently, as well as at the time of the transaction, devotes full time to managing the investments in the portfolio. Prior to his retirement, he was responsible for the investment portfolio of the loan company which he owned. He has had investment accounts with the following brokerage houses: Hayden, Stone Incorporated; Goodbody & Co.; Merrill, Lynch, Pierce, Fenner & Smith, Inc.; Hentz & Co.; Harris Upham & Co., Incorporated, and Laird, Bissel and Meeds. He has had cash accounts, marginal accounts and commodities investments accounts. Among the financial publications he reviews are the Value Line Service, Barrons and the Wall Street Journal. Mr. Henderson can only be described as a sophisticated investor.

The transaction which is the subject of this suit is known as a "start up" or "venture capital" type of investment. It is a private investment in which individuals pool their ideas and their funds in hopes that the funded company will "go public". Even with the most sophisticated of investors, this type of venture involves risk and it is an "educated guess", they are "rolling the dice."

The plaintiff now seeks to rescind the transaction because the stock he received was not registered in accordance with the provisions set forth in both Federal and Florida Statutes. These statutes prohibit the sale of unregistered securities except in certain situations in which either the security or the transaction is *exempt* from the registration requirement.

On these facts the district court proceeded to hold that the sale to Henderson was not part of a public offering, and that Perry, Whittaker, and Pope were therefore absolved from liability under Section 4(2) [15 U.S.C.A. § 77d(2) (1971)]. The court considered the following factors in reaching its conclusion: (1) the number of people involved in this capital venture was small, and all were sophisticated investors, (2) none of the defendants "solicited for the sale of stock," and (3) the amount of money invested by Henderson was small vis-a-vis his total investment portfolio. Our opinion in Hill York Corp. v. American Int'l Franchises, Inc., 448 F.2d 680 (5th Cir. 1971), rendered after the date of the judgment on appeal here, makes it obvious that the district court did not apply correct standards in reaching his conclusion.

■■ Viewing the evidence as adduced in light of the principles enunciated in *Hill York* makes it apparent that the defendants have not met their burden of establishing their entitlement to the "private offering" exemption. See *Hill York, supra* at 690. At the threshold, we are met with a dispute over the relevant offering to be considered. The district court stated rather enigmatically that it "must look at the particular set of facts surrounding *only* the sale in question." (Emphasis in original.) If the district court meant that only the sale to Henderson was relevant, that view would be myopic (unless of course Henderson had been the only offeree, which he was not). Rather, we interpret his statement, as do the defendants themselves, to mean that the relevant offering was the offering of shares of stock in exchange for 300,000 dollars of venture capital. Henderson seeks to broaden our vistas to encompass other offerings made by Electro-Kinetics to its shareholders. This "integrated offering" theory, however, was not presented below and may not be raised for the first time on appeal. *Hill York, supra* at 689–690. Thus we will evaluate only the evidence adduced concerning the single offering of stock in exchange for 300,000 dollars, and proceed to a *seriatim* consideration of the four principles pronounced in *Hill York* as they relate to that offering.

First of all, the state of the evidence leaves it unclear as to the number of offerees involved with this offering. We do know that the defendant Pope neither sold nor offered stock to anyone; that

defendant Whittaker sold stock to three persons—but made no other offers; and that though defendant Perry sold stock to four individuals, a review of the record does not reveal whether he made additional offers. Similarly, no evidence was adduced as to how many offers Mike Downing (a person involved in the selling effort, but not a co-defendant in this case) tendered.

Secondly, the relationship between the offerees and the issuer is not known. Did the offerees have any knowledge of the business affairs of Electro-Kinetics? Did they possess the same information as would be found in a registration statement? Did they have access to such information? Thirdly, we know nothing of the offerees' relationships among themselves and their knowledge of each other. Finally, the record reveals no evidence as to the manner in which the offering was made. Without this additional information, no valid evaluative judgment of the existence *vel non* of a private offering could be made. Thus Henderson has established a Section 5 violation [15 U.S.C.A. § 77e (1971)] for which recovery is available under Section 12(1) [15 U.S.C.A. § 77l(1) (1971)].

But the defendants argue that recovery is not automatic. They contend that Henderson is in effect estopped to recover under the particular circumstances of this case. They rely upon A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed.

500 (1941) for the proposition that the federal courts may deny rescission, even where there is a Section 5 violation, if granting such relief would frustrate the purpose of the Securities Act. While we agree that *Frost* stands for this rule, we do not agree that it is applicable to this case. We cannot say that in the present appeal rescission would frustrate the Act's purpose. While one of the essential purposes of the Act is to protect innocent purchasers of securities, *Id.* at 43, and though Henderson is certainly not the average innocent investor, nevertheless allowing him to recover clearly will not frustrate the legislative purpose. It merely fails to serve that purpose. Defendants have demonstrated no other legislative purpose which would be frustrated by this result. *Frost* does not hold that recovery may be granted only when the purposes of the Act are thereby affirmatively effectuated. In any event, the concomitant of the legislative purpose is affirmatively served here. Congress sought to encourage sellers of securities to register those securities prior to any sales or offers to sell. By allowing recoveries such as the one in this case, unregistered sales are discouraged. Thus it is apparent that Henderson may recover from Perry, Pope, and Whittaker under Section 12(1).

The district court held, and the defendants concede, that a violation of Fla.Stat.Ann. § 517.01 et seq. (1962) occurred in this case. But the district court further held that since the statute made the sale voidable,[1] the court was

---

1. 517.21. Remedies available in case of unlawful sale:

(1) Every sale made in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser; and the person making such sale and every director, officer or agent of or for the seller, if the director, officer or agent shall have personally participated or aided in any way in making the sale, shall be jointly and severally liable to the purchaser in an action at law in any court of competent jurisdiction upon tender of the securities sold or of the contract made, for the full amount paid by such purchaser, with interest, together with all taxable court costs and reasonable attorney's fees; provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale and provided further, that no purchaser otherwise entitled shall claim or have the benefit of this section who shall have refused or failed within thirty days from the date thereof to accept an offer in writing of the seller to take back the security in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

vested with equitable discretion to deny rescission. Defendants do not attempt to justify this broad a reading of the Florida statute, and we think wisely so, for it is clear that courts are not imbued thereby with the kind of equitable rescission power the lower court envisioned. Indeed, the only defense of this portion of the ruling put forward by the defendants is that estoppel under Florida law [2] may justify foreclosure of the purchaser's statutory rescission right. Defendants argue that the district court was really applying the estoppel defense (although he did not use the word "estoppel"), and that, since estoppel is a question of fact under Florida law,[3] the district court's holding is armed with the buckler and shield of the clearly erroneous test of Fed.R.Civ.P. 52(a). The problem with this position is that it is clear from the district court's opinion that estoppel was not the basis of its fact findings. The court did not mention any of the cases footnoted above. More importantly, a reading of these cases convinces us that estoppel could not apply in this situation. Estoppel under Florida law requires that the stock purchaser directly participate in the management of the issuing corporation or otherwise exercise some control over the corporation. Admittedly that did not occur here. Therefore, we hold that the defense of estoppel is not available to the defendants, and that they are also liable to Henderson under Florida law.

Finally, we must determine the vicarious liability of Witt, and Hayden, Stone Incorporated under both the federal law and the Florida law. Henderson concedes that these defendants can be liable only if Pope, Perry, and Whittaker are liable, but this is now established.

Witt was at all material times a Vice-President of Hayden, Stone and in charge of its Southeastern region. Witt also invested in Electro-Kinetics stock about ten days after Henderson's investment.

Relating to the Securities Act of 1933, Henderson argues that Hayden, Stone is liable under the doctrine of apparent authority. Henderson concedes that Perry was acting outside the scope of his actual authority when he effected this sale of stock. Henderson specifically contends, however, that a conflict in the evidence as to Henderson's knowledge of Hayden, Stone's involvement precluded the district judge from directing a verdict on the issue of apparent authority. This was a non-jury case, and the directed verdict therein was actually a Rule 41(b) involuntary dismissal. Under Rule 41(b) the district judge is required to enter findings of fact and conclusions of law (as was done here), and his judgment acts as a judgment on the merits. *See* Fed.R.Civ.P. 41(b). The findings of fact are subject to the clearly erroneous standard of review. Trask v. Susskind, 376 F.2d 17 (5th Cir. 1967). The district judge found that "Henderson knew or had reasonable grounds to know that Perry's acts were not as Hayden, Stone's agent." This finding is not clearly erroneous.

Henderson next argues that it was by reason of Witt's action and inaction that Hayden, Stone ratified the sale of the stock by Perry. Without pursuing the complete ratiocination, it is sufficient to note that one prerequisite for ratification is that Perry purport to act as Hayden, Stone's agent in the transaction. *See* Thomas v. Wood, 37 F.2d 856 (5th Cir. 1930) and cases collected in 2 C.J.S. Agency § 41 a. (1936). Not only is there no evidence that Perry ever represented that Hayden, Stone was involved in this transaction, but the district court also held that Henderson knew or had reason to know that Perry was not acting as Hayden, Stone's agent.

---

2. The defense of estoppel is supported by the following cases:
   Dokken v. Minnesota-Ohio Oil Corp., 232 So.2d 200 (Fla.App.2d Dist. 1970); Kransy v. Richter, 211 So.2d 612 (Fla. App. 3rd Dist. 1968); Monroe v. Dixon, 152 So.2d 744 (Fla.App.3rd Dist. 1963); Harrison v. McCourtney, 148 So.2d 53 (Fla.App.2d Dist. 1963); Popper v. Havana, 122 So.2d 247 (Fla. App. 3rd Dist. 1960).

3. Harrison v. McCourtney, *supra* n. 2.

■ As his last resort under the Securities Act, Henderson contends that Hayden, Stone and Witt were "controlling persons" within the meaning of Section 15 [15 U.S.C.A. § 77*o* (1971)].[4] However, assuming Witt and Hayden, Stone were controlling persons, they come within the controlling persons' special defense. *Hill York, supra,* 448 F.2d at 694. The fact findings of the district court, amply supported by the record, establish this defense beyond cavil.

Henderson presents two theories of vicarious liability under Florida law. First, he contends that Witt is liable because he personally participated in the transaction. Under Section 517.21, Witt must have personally participated or aided in making the sale; the findings of the district court completely negate this possibility. Alternatively, Witt would have had to have been Perry's agent, which he clearly was not.

Finally, Henderson argues that Hayden, Stone is absolutely liable for the acts of Perry notwithstanding the fact that he was acting outside the scope of his authority or without the knowledge of Hayden, Stone. This point is without merit since Hayden, Stone was clearly not "the person making the sale" within the meaning of Section 517.21. Rule 330-3.05 of the Florida Securities Commission Rules does not affect this result.

The judgment of the district court as to Perry, Pope, and Whittaker is reversed and remanded with directions to enter judgment in behalf of Henderson against Perry, Whittaker and Pope. The judgment in favor of Witt and Hayden, Stone is affirmed.

Affirmed in part, reversed in part and remanded with directions.

---

4. Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable joint-ly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.