787 F.2d 985
 Blue Sky L. Rep. P 72,383, 54 USLW 2554,
Fed. Sec. L. Rep. P 92,700
 Maurice DAHL, Gary Clark, W. Grantham, Robert Daniele,
Charles Dahl, Dowayne Bockman, Ray Dilbeck, Richard Koon,
Art Overgarrd, Jack Yeager, Accra Tronics Seals Corp., and
Aaron Heller, Plaintiffs-Appellees,
v.
Billy J. "B.J." PINTER, Black Gold Oil Company, Pinter
Energy Company, and Pinter Oil Company,
Defendants-Appellants.
 No. 84-1970.
 United States Court of Appeals,
Fifth Circuit.
 April 18, 1986.
 
 Braden W. Sparks, Newman, Shook & McManemin, Dallas, Tex., for defendants-appellants.
 John A. Spinuzzi, Denton, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before BROWN, REAVLEY, and HILL, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 In this appeal Pinter[1] urges that his liability under section 12(1) of the Securities Act of 1933, 15 U.S.C. Sec. 77l(1), and article 33 A(1) of the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581-33 A(1) (Vernon Supp. 1986), should be diminished by plaintiff Maurice Dahl's wrongful conduct. We disagree with this contention and affirm the decision of the district court granting judgment for plaintiffs.
 
 I.
 
 2
 This controversy arises out of the sale of unregistered securities (fractional undivided interests in oil and gas leases) by Pinter to Dahl and to Dahl's associates. Dahl is a California real estate investor who, at the time of his dealings with Pinter, was a veteran of two failed oil and gas ventures. Ever an optimist, Dahl aggressively sought out additional oil and gas properties for investment and after an extensive search settled on some leases held by Pinter. Dahl toured the property several times, frequently without Pinter, so that he could talk to others and "get a feel for the properties." After looking at the geology, drilling logs, and production history assembled by Pinter, he concluded that there was no way he could lose.
 
 
 3
 Dahl was so enthusiastic about Pinter's leases that he told plaintiff Wendy Grantham and the ten other plaintiffs, all of whom were either friends or family of Dahl, about the venture. The district court found that with the exception of Grantham who herself conceived the idea to purchase, Dahl "solicited" these friends "in connection with the offer, purchase, and receipt of their oil and gas interests." These solicitations clearly were motivated by Dahl's desire to enrich his friends and family as Dahl received no commission by way of discount or otherwise in connection with the purchases made by any plaintiff.
 
 
 4
 Each investment letter-contract signed by the purchasers was a form prepared by Pinter. That document contained the following language:
 
 
 5
 Whereas the parties constitute a predetermined and limited group of sophisticated and knowledgeable well informed investors who desire to arrange for participation in an oil and/or gas drilling venture as an investment and do declare that it is not for the purpose of reselling their interest therein. (These participating interests are being sold without the benefit of registration under the Securities Act of 1933, as amended, and on reliance of rule 146 thereunder.)
 
 
 6
 Dahl, who helped each of the other plaintiffs complete the letter contracts, knew that the interests were being sold without benefit of registration. There is no evidence, however, that Dahl knew that Pinter's failure to register was in violation of federal and state securities laws.
 
 
 7
 The plaintiffs' acquired interests ultimately proved worthless and plaintiffs sought relief under section 12(1) of the Securities Act of 1933[2] and article 33 A(1) of the Texas Securities Act.[3]
 
 
 8
 The district court found that Pinter's failure to register the securities purchased by plaintiffs was unlawful and permitted plaintiffs to recover the purchase price of the unregistered securities plus interest less investment income. Pinter maintains that because of his promotional activities Dahl, too, is liable as a "seller" of unregistered securities under section 12(1) and article 33 A(1) and thus should be accountable to Pinter in contribution for the amounts awarded to the other plaintiffs. Further, Pinter argues that Dahl should be barred from any personal recovery from Pinter under the equitable doctrines of in pari delicto, estoppel and unclean hands.
 
 II.
 A. Availability of Equitable Defenses
 
 9
 In Henderson v. Hayden, 461 F.2d 1069 (5th Cir.1972), this court determined that a plaintiff seeking a return of consideration paid for unregistered securities under section 12(1) could not be estopped by virtue of his having been aware that the securities were unregistered.
 
 
 10
 We cannot say that in the present appeal rescission would frustrate the Act's purpose. While one of the essential purposes of the Act is to protect innocent purchasers of securities ... and though [plaintiff] is certainly not the average innocent investor,[4] nevertheless, allowing him to recover clearly will not frustrate the legislative purpose.... Congress sought to encourage sellers of securities to register those securities prior to any sales or offers to sell. By allowing recoveries such as the one in this case, unregistered sales are discouraged. Thus it is apparent that [plaintiff] may recover from [defendants].
 
 
 11
 461 F.2d at 1072 (footnote added). The plaintiff in Henderson was at least as sophisticated a buyer as Dahl. His state of awareness regarding the seller's failure to register was, as far as we can tell, identical to Dahl's. There is no evidence indicating that Dahl bought the securities knowing that Pinter's failure to register violated federal statute.
 
 
 12
 The facts of Henderson are, in every material respect, indistinguishable from the facts of the case at bar. We forestall reliance on Henderson as controlling precedent, however, pending a determination whether it has been displaced by a recent Supreme Court Case, B. Eichler, H. Richards, Inc. v. Berner, 472 U.S. ----, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985).
 
 
 13
 In Eichler the Supreme Court established that the doctrine of in pari delicto will bar a plaintiff's recovery in a section 10(b) action under the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), when:
 
 
 14
 (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and
 
 
 15
 (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investment public.
 
 
 16
 Id. at ----, 105 S.Ct. at 2629, 86 L.Ed. at 224. Unlike the standard employed in Henderson which focuses on whether preclusion of suit would further the goals of securities legislation, the Eichler test queries whether preclusion of suit would interfere with enforcement of the legislation. If Eichler applies to a section 12(1) action as well as to a section 10(b) action, it appears that Henderson would no longer be valid precedent.
 
 
 17
 The in pari delicto doctrine eminates from the Latin expression, "in pari delicto est conditio defendentis (In a case of equal or mutual fault ... the position of the [defending party] is the better one)."[5] The doctrine is a corollary of the unclean hands maxim, the principal difference being that the in pari delicto doctrine technically applies only when the plaintiff's fault is substantially equal to the defendants. Not any act suffices to bring into play the doctrines of in pari delicto and unclean hands. As the Supreme Court points out in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), the doctrines apply "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." Id. at 245, 54 S.Ct. at 147 (emphasis supplied). The unclean hands and in pari delicto maxims operate against conduct which is contrary to the dictates of good conscience or fair dealing. 2 Pomeroy, Equity Jurisprudence, 92-94 (5th ed. 1941); United States v. Second National Bank of North Miami, 502 F.2d 535, 548 (5th Cir.1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); Deseret Apartments v. United States, 250 F.2d 457 (10th Cir.1957); see also United States v. I-12 Garden Apartments, 703 F.2d 900 (5th Cir.1983). Moreover, the maxims refer "to willful misconduct rather than to merely negligent conduct. The improper conduct which falls within the maxim must involve intention as opposed to an inadvertent act or a misapprehension of legal rights; the conduct must be morally reprehensible as to known facts." 30 C.J.S. Equity Sec. 95, at 1022 (1965); (citations omitted); Preload Technology, Inc. v. A.B. & J. Construction Co., 696 F.2d 1080 (5th Cir.1983).
 
 
 18
 Unlike section 10(b) which contains an element of scienter, section 12(1) is a strict liability offense. Swenson v. Engelstad, 626 F.2d 421, 424 (5th Cir.1980). Pinter is liable thereunder notwithstanding the fact that it probably misapprehended its duty to register. Dahl, also unaware of Pinter's duty to register, was as "culpable" as Pinter in the sense that his conduct was an equal producing cause of the illegal transaction, in short, in the sense that he was equally non-culpable. Causation, however, does not create unclean hands nor does equal causation constitute equal fault. Absent a showing that Dahl's conduct was "offensive to the dictates of natural justice," Keystone Driller, 290 U.S. at 245, 54 S.Ct. at 147, the in pari delicto and unclean hands are not available.
 
 
 19
 Remaining to be decided is whether Pinter may defend on grounds of estoppel, and in this regard whether Eichler, precluding suit when preclusion would not interfere with the enforcement of the securities laws, or Henderson, precluding suit only when preclusion would further the goals of the securities laws, is the governing standard. We believe that Henderson supplies the appropriate standard and, thus, the controlling authority in this case.[6] By its own terms, the Eichler standard applies when "damages [are sought to] be barred on the grounds of the plaintiff's own culpability," a condition not present under our facts. Eichler, 472 U.S. at ----, 105 S.Ct. at 2629, 86 L.Ed. at 224. Additional evidence of Eichler's limited applicability lies in the fact that the second prong of Eichler substantially mirrors the classic formulation of the in pari delicto doctrine. As the Court explains, "[t]he defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." Id. at ---- - ----, 105 S.Ct. at 2625-26, 86 L.Ed.2d at 221-22. Traditionally, the in pari delicto defense has been precluded where "there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be." 1 J. Story, Equity Jurisprudence 305 (13th ed. 1886), quoted in Eichler, 472 U.S. at ----, 105 S.Ct. at 2627, 86 L.Ed.2d at 222. A plaintiff with unclean hands, in essence, must overcome a presumption that entertainment of his suit would not serve the public interest; and, in accordance with this principle, Eichler permits the application of the in pari delicto doctrine in the context of securities regulation when "preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." Eichler, 472 U.S. at ----, 105 S.Ct. at 2628, 86 L.Ed.2d at 224.
 
 
 20
 The law imposes no such presumption on Dahl. The issue in this case is not how the parties' legal relationship should be structured in order to give maximal effect to the two independent values undergirding the unclean hands doctrine and the federal securities laws. In contrast to the unclean hands and in pari delicto defenses, the estoppel theory asserted by Pinter has no independent existence in principles of judicial integrity but arises exclusively from within the relationships that are regulated by federal statute. The issue, then, is simply whether section 12(1), providing for a general right to rescind a sale of securities not registered in compliance with the 1933 Act, may, in the context of federal securities law, be fairly construed as applying only to purchasers who do not know their securities are unregistered. In interpreting the scope of a statutory provision, courts have developed numerous aids to construction, one being whether an unprovided-for sanction or remedy "further[s] the essential purpose of the enactment." See A.C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 43, 61 S.Ct. 414, 417, 86 L.Ed.2d 500 (1940). We believe that Henderson, which posed the question whether allowing plaintiff's suit in accordance with the express provisions of section 12(1) would frustrate the purposes of the Securities Act of 1933, is a sound construction and conclude that the district court's failure to allow Pinter's asserted equitable defenses was not erroneous.[7]
 
 
 21
 Because we find that Dahl has a right to recover from Pinter under federal law, we need not decide whether Pinter's asserted defenses would bar Dahl's recovery under state law.
 
 B. Availability of Contribution
 
 22
 In our decision to permit rescission by Dahl, we have relied heavily upon the absence of any evidence indicating that Dahl possessed knowledge of the illegality of Pinter's failure to register. We reiterate, however, that this fact is irrelevant in deciding whether Dahl is a "seller" of securities.[8] Under section 12(1) the liability of a "seller" of unregistered securities is absolute in the sense that it is not predicated upon knowledge that registration was legally required. Swenson v. Engelstad, 626 F.2d 421, 424 (5th Cir.1980); Lynn v. Caraway, 252 F.Supp. 858 (W.D.La.1966), aff'd per curiam, 379 F.2d 943 (5th Cir.1967), cert. denied, 393 U.S. 951, 89 S.Ct. 373, 21 L.Ed.2d 362 (1968).
 
 
 23
 A "seller" is (1) one who parts with title to securities in exchange for consideration or (2) one whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place. Swenson v. Engelstad, 626 F.2d at 426-27; Pharo v. Smith, 621 F.2d 656, 667 (5th Cir.1980); Hill York Corp. v. American International Franchises, Inc., 448 F.2d 680, 692-93 (5th Cir.1971).
 
 
 24
 We have no difficulty finding that Dahl's conduct was a "substantial factor" in causing the other plaintiffs to purchase securities from Pinter. No plaintiff had any familiarity with the Pinter oil and gas interests until contacted by Dahl. Dahl represented to these plaintiffs that based on his own investigations the investments could not lose. And, with the exception of Grantham, the plaintiffs relied exclusively upon communications with Dahl in making their decision to purchase the securities. The district court found, moreover, that all plaintiffs but Grantham "decided to invest because of Dahl's involvement" and that "Dahl, not Pinter, was the person who caused [Grantham] to purchase."
 
 
 25
 Notwithstanding our conclusion that Dahl meets the substantial factor test, we decline to hold that he is a "seller" for the purposes of section 12(1). The substantial factor test was formulated and has been applied under facts which differ substantially from the facts of this case. In every case we have found employing this test (or its substantial equivalent), the person sought to be held liable as a "seller" received or hoped to receive some financial benefit from his efforts. See, e.g., Junker v. Crory, 650 F.2d 1349 (5th Cir.1981) (corporate attorney acting in capacity as agent of seller); Croy v. Campbell, 624 F.2d 709 (5th Cir.1980) (attorney-accountant who was paid for investment advice); Lewis v. Walston & Co., 487 F.2d 617 (5th Cir.1973) (investment broker); Hill York Corp., 448 F.2d 680 (compensated agents of the issuer). We believe that had this circuit previously been confronted with a promoter of unregistered securities whose efforts were intended to benefit neither the seller nor himself, we would have created a different test. That test would have incorporated a threshold requirement that the promoter be motivated by a desire to confer a direct or indirect benefit on someone other than the person he has advised to purchase. We believe that a rule imposing liability (without fault or knowledge) on friends and family members who give one another gratuitous advice on investment matters unreasonably interferes with well-established patterns of social discourse. Absent express direction by Congress, we decline to impose liability for mere gregariousness.
 
 
 26
 As for Pinter's argument that Dahl is a "seller" under Texas securities law, we find that Texas' test for liability is substantially in accord with that which we adopt today in the federal arena. In Stone v. Enstam, 541 S.W.2d 473 (Tex.Civ.App.--Dallas 1976, no writ), the Texas Court of Civil Appeals found that an individual who, without benefit to himself, "volunteered" to find someone who would sell stock to a prospective buyer, was not a "seller" within the meaning of article 33 A. Dahl was clearly no more than a "volunteer" and therefore is not liable under Texas law to the other plaintiffs.
 
 
 27
 There being no liability under either federal or state law upon which a right of contribution in favor of Pinter may be predicated, we find that the district court's refusal to assess damages against Dahl was correct.
 
 
 28
 AFFIRMED.
 
 
 29
 JOHN R. BROWN, Circuit Judge, dissenting.
 
 
 30
 The Court today has reached a result allowing a plaintiff to take refuge in the protections provided by federal and state securities law even when the plaintiff participates in those violations to an equal or greater extent than the defendant. Because I find this result contrary to settled law and unsound as a matter of securities policy, I must respectfully dissent from the Court's opinion.
 
 
 31
 It is settled law that a securities case plaintiff may be denied recovery on the basis of the in pari delicto defense. B. Eichler, H. Richards, Inc. v. Berner, 472 U.S. ----, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985); Kuehnert v. Texstar Corp., 412 F.2d 700 (5th Cir.1969). In Eichler the Supreme Court ruled that a private action for damages under the federal securities laws may be barred on the grounds of the plaintiff's own culpability where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public. Eichler, 472 U.S. at ----, 105 S.Ct. at 2629, 86 L.Ed.2d at 224.
 
 
 32
 Dahl's conduct in this case gives rise to two theories under which the in pari delicto defense operates to bar his recovery under either Texas law or the 1933 Act. First, Dahl's conduct in exhorting the other plaintiffs to invest transformed him into a "seller" of unregistered securities. In other words, his conduct put him in the same boat as Pinter, from whom Dahl is attempting to recover in this case. Second, in addition to "selling" unregistered securities, Dahl knowingly purchased unregistered securities from Pinter. In fact, Dahl was the primary mover--the "catalyst"--even with respect to his own purchases.[1]
 
 
 33
 The Fifth Circuit test for determining whether Dahl is a "seller" under Sec. 12(1) or Sec. 12(2) of the 1933 Act is whether the injury to the plaintiff flows directly and proximately from the actions of Dahl. See Hill York Corp. v. American International Franchises, Inc., 448 F.2d 680, 692-93 (5th Cir.1971). In applying this test, the Court in Hill York ruled that certain persons fell within the letter and spirit of the test because they were the "motivating force" behind the promotion and "did everything but effectuate the actual sale." Id. at 693. In Lewis v. Walston & Co., Inc., 487 F.2d 617 (5th Cir.1973), we again discussed how parties who participate in the negotiations of or arrangements for the sale of unregistered securities "sell" those securities within the meaning of Sec. 12(1) of the 1933 Act. The Lewis court ruled that the "proximate cause" aspect of the Hill York test is satisfied if the alleged seller's actions are a "substantial factor" in bringing about the plaintiff's purchases.
 
 
 34
 The findings in the present case clearly indicate that Dahl was a "substantial factor" in bringing about the other plaintiff's purchases and is therefore a seller. As the majority opinion correctly recognizes, no plaintiff had any familiarity with the Pinter oil and gas interests until contacted by Dahl, and all but one relied exclusively upon communications with Dahl in deciding to purchase the securities. The District Court even found that it was Dahl and not Pinter who caused the other plaintiffs to purchase. Notwithstanding all these findings as well as the majority's conclusion that Dahl meets the substantial factor test, this Court declines to hold that Dahl is a "seller."
 
 
 35
 The Court's determination that a "seller" should include only those whose efforts were intended to benefit themselves in some manner is wholly without support in law and flies in the face of the policy underlying the securities registration laws. Securities law is concerned with the protection of the public. The public may be injured (as happened here) by a careless "seller" of unregistered securities whether there is something in it for the seller or not. In other words, it is Dahl's conduct that endangered the public regardless of his state of mind. Thus, the majority's weak attempt to distinguish the "substantial factor" cases by pointing out that the "sellers" in those cases had some expectation of financial benefit has no more foundation in securities law and policy than a distinction based on the color of the seller's hair or the size of his tennis shoes.[2] The opinions which the majority distinguishes do not in any way indicate that financial benefit was a factor in the decision of those cases. The Court in this case is inventing new law that threatens to undermine the protections provided to the public by the securities laws.[3]
 
 
 36
 The Court's concern with imposing liability on friends and family members who give one another gratuitous advice is a herring, red or otherwise. Merely offering advice or informal investment suggestions will rarely meet the "motivating force" or "substantial factor" test thereby transforming an optimistic investor into a "seller." In the situation at hand, Dahl's conduct went far beyond giving gratuitous advice. For all practical purposes he was the seller in the literal sense of the word--moreso even than Pinter. Furthermore, if a friend or relative's conduct converts him into a "seller" under established law, why shouldn't the purchasers be able to invoke the protection of the securities laws and sue him? They may choose not to, even when the friend's conduct is as aggressive as Dahl's was here. This is their prerogative, but purchasers should at least have the ability to invoke the securities laws, if they so choose, to sue a friend whose conduct was a substantial factor in causing their injury. In most cases, disgruntled friends and relatives of someone like Dahl will probably do exactly what the plaintiffs did here--go after the "issuer" (Pinter). In any event, the issue on this appeal is not whether we should allow a friend or relative to sue Dahl, but whether we should let Dahl recover from Pinter even though Dahl was equally if not more at fault for the securities violations. In my view, we should not.
 
 
 37
 In addition to being a seller of unregistered securities and therefore in the same boat as Pinter, Dahl's status as a knowing purchaser--in fact, his status as a catalyst for the entire transaction--is another basis on which the in pari delicto defense operates to bar his recovery. See Ladd v. Knowles, 505 S.W.2d 662 (Tex.Civ.App.1974); see also Kuehnert v. Texstar Corp., 412 F.2d 700, 703 (5th Cir.1969) ("This is not a case of mere knowledge of another party's wrongdoing, without active participation."); Godfrey, Plaintiff's Conduct as a Bar to Recovery Under the Securities Acts: In Pari Delicto, 48 Tex.L.Rev. 181, 192-94 (1969) (recognizing that more than mere knowledge may be required under the federal securities law for the in pari delicto defense to bar a purchaser's recovery, but concluding that acting as a catalyst for the violation clearly goes beyond mere knowledge). In Ladd the Court expressly held that if transactions are illegal solely because the stock is unregistered, a plaintiff's knowing participation in the sale--for example, by purchasing the stock--makes the plaintiff equally culpable with the seller and, therefore, in pari delicto. 505 S.W.2d at 668 (emphasis added).
 
 
 38
 My brethren cite a Fifth Circuit case, Henderson v. Hayden, 461 F.2d 1069 (5th Cir.1972), for the proposition that knowledge that securities are unregistered does not estop a plaintiff from prevailing under Sec. 12(1). This is no longer a persuasive case as it does not reflect the current state of in pari delicto law. See B. Eichler, H. Richard, Inc. v. Berner, 472 U.S. ----, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). Technically, it is not even an in pari delicto case--it just looks like one. The Court in Henderson did not even discuss the issue of "equal culpability," the cornerstone of an in pari delicto defense. Rather, the decision in Henderson was based on a very general policy-oriented principle which stated that a plaintiff should not be allowed rescission under Sec. 12(1) if that rescission would frustrate the Act's purpose. 461 F.2d at 1072. Subsequent case law in the Fifth Circuit and the Supreme Court which specifically discusses the in pari delicto defense declares that the crucial question is not whether rescission will frustrate the Act's purposes but whether denying rescission will. B. Eichler, H. Richard, Inc. v. Berner, 472 U.S. ----, 105 S.Ct. 2622, 2629, 86 L.Ed.2d. 215, 224 (1985); Woolf v. S.D. Cohn & Co., 515 F.2d 591, 602-05 (5th Cir.1975), vacated and remanded on other grounds, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976). In other words, given that the plaintiff and defendant are equally culpable for the violation, the proper inquiry is whether the Act's purposes will be frustrated by allowing in pari delicto to be used as a defense to rescission in a particular case.
 
 
 39
 The correct formulation of the rule, according to the Supreme Court, is that a private securities action may be barred on the ground of a plaintiff's own culpability where:
 
 
 40
 (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and
 
 
 41
 (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investment public.
 
 
 42
 B. Eichler, H. Richard, Inc. v. Berner, 472 U.S. ----, 105 S.Ct. 2622, 2629, 86 L.Ed.2d 215, 224, (1985) (emphasis added). Accord Woolf v. S.D. Cohn & Co., 515 F.2d 591, 602-03 (5th Cir.1975), vacated and remanded on other grounds, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976).[4]
 
 
 43
 Dahl's conduct in this case fits the test under either the "seller" theory or the "knowing purchaser" theory. Dahl is as responsible as Pinter (probably moreso) with respect to the sales to the other plaintiffs as well as with respect to his own purchase. Dahl was the prime mover in the sales to the other plaintiffs. The District Court even found that he, and not Pinter, caused all the other plaintiffs to invest. The record also shows that Dahl was the "catalyst" even for his own investment in unregistered securities. He approached Pinter, carefully studied the drilling logs, and wanted in. And, of course, Dahl knew that the securities were unregistered.
 
 
 44
 Not only was Dahl equally culpable, but the purpose of the securities laws will not be disserved by barring his recovery. In fact, the enforcement of the securities laws and the protection of the public will be promoted. We do not want sophisticated oil and gas investors such as Dahl going around "selling" unregistered securities to less knowledgeable investors. The "public" which we should be concerned about protecting in this case is not Dahl but the less informed people that he pulled into the venture. They should be able to recover from either Dahl or Pinter, but Dahl should be barred from recovering from Pinter.[5]
 
 
 45
 Fifth Circuit case law also indicates that the securities laws may be flustered if plaintiffs such as Dahl are allowed to put themselves in no-lose situations by virtue of their knowledgeable participation in securities violations. See Kuehnert v. Texstar Corp., 412 F.2d 700 (5th Cir.1969). This is exactly what Dahl did when he knowingly purchased unregistered securities--he put himself in a no-lose situation by acquiescing in, and being the catalyst for, a securities law violation. If the investment had paid off, Dahl would be at home counting his money instead of in court suing Pinter. Instead, the investment was a flop and Dahl sought to invoke the protections of the very laws which were violated primarily because of his own conduct. The securities laws were not meant to serve as a safety valve so sophisticated investors such as Dahl can, in the war weary but still vivid phrase, "have their cake and eat it too." Allowing this fence-sitting to occur will encourage securities law violations. Thus, it cannot be said that precluding Dahl's recovery would interfere with the effective enforcement of the securities laws. Quite the contrary, it would promote effective enforcement because it would discourage those who act as a "catalyst" for securities violations in the hope of placing themselves in a no-lose situation.
 
 
 46
 In a nutshell, I believe that a fair application of the Supreme Court rule in Eichler yields a result at odds with the decision handed down today. Dahl bears at least substantially equal responsibility for the violations he seeks to redress, and barring his recovery works no interference with the effective enforcement of the securities laws and the protection of the public. In fact, as I have attempted to show, public protection and effective enforcement would be promoted by finding Dahl's recovery blocked by the in pari delicto defense. Therefore, I must respectfully dissent.
 
 
 
 [1]
 The defendants-appellants are Billy J. Pinter, individually and d/b/a Black Gold Oil Co., Pinter Energy Co., and Pinter Oil Co. Throughout this opinion appellants will be referred to as "Pinter."
 
 
 [2]
 Section 12(1) provides:
 Any person who--offers or sells a security in violation of section 77e of this title ... shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
 15 U.S.C. Sec. 77e. Title 15 U.S.C. Sec. 77e provides, in pertinent part, that if a security is unregistered it is unlawful for a person, directly or indirectly, to use the mails to sell or deliver the security.
 
 
 [3]
 Article 33 A(1) provides:
 A person who offers or sells a security in violation of Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23B, or an order under 23A of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security.
 Texas Ann.Civ.Stat. art. 581-33 (Vernon Supp. 1986).
 
 
 [4]
 Plaintiff was a highly sophisticated and successful investor who devoted his full time to managing his investment portfolio
 
 
 [5]
 Black's Law Dictionary 711 (5th ed. 1979)
 
 
 [6]
 Even if we were to apply the Eichler standard, Dahl would still be permitted to recover under section 12(1). In Eichler a tippee who voluntarily and, under the facts assumed by the Supreme Court, knowingly traded on inside information was permitted to go forward with his section 10(b) suit against the tipper. First, the Court found that barring private actions in cases such as this would "inexorably result in a number of fraudulent practices going undetected by the authorities and unremedied." 472 U.S. at ----, 105 S.Ct. at 2631, 86 L.Ed.2d at 227. Second, the Court reasoned that defendants would be more responsive to the deterrent pressure of potential sanctions because they made the first step in the chain of dissemination and were also more likely to be advised by counsel. We believe that the Eichler Court's analysis applies with equal force to the case at bar. We also note that allowing section 12(1) suits for rescission when the plaintiff is unaware that the securities are unregistered in violation of federal law is unlikely to induce plaintiffs to enter into illegal transactions
 
 
 [7]
 In deciding this issue adversely to Pinter we have not lost sight of the fact that Dahl was involved in solicitations of sales to the remaining plaintiffs. We find in the second part of this opinion, however, that these solicitations were not wrongful; they cannot, therefore, give rise to the defenses asserted by Pinter. Moreover, even if these solicitations were wrongful we fail to discern how Dahl's conduct with respect to sales which were wholly independent of his own purchases from Pinter affect the rationale adopted by this court in Henderson. Dahl, after all, is not seeking to recover for Pinter's failure to register the securities it sold to the other plaintiffs. He seeks to recover only the purchase price of his own securities and, with respect to those purchases, Dahl's conduct as a buyer was not wrongful. Dahl had no knowledge that the securities were required to be registered nor was Dahl's purchase of the securities in furtherance of any securities violations against third parties
 
 
 [8]
 None of the other plaintiffs has sought to recover from Dahl. Dahl's liability on their claims therefore is in issue only if contribution is a remedy available to Pinter. While no code section specifically allows for a right of contribution against a "seller" in Dahl's position, section 16 of the Securities Act of 1933, 15 U.S.C. Sec. 77p, provides for "such additional right and remedies that may exist at law or in equity." For the purposes of this analysis, we assume, without deciding, that Pinter is entitled to a right of contribution under federal law. In so doing, we emphasize that this opinion does not stand for the proposition that contribution is an appropriate remedy under these facts. In light of the clear purpose of section 12(1) to disgorge the purchase price from the seller of unregistered securities, we view as unsound any result which would permit Pinter to retain part of the consideration paid by plaintiffs
 
 
 [1]
 With respect to either of these two theories, whether or not Dahl also knew of the illegality of selling unregistered securities--which the majority apparently considers to be of some importance--is irrelevant. Knowledge of illegality plays no part in Sec. 12(1) liability for "selling" unregistered securities. Knowledge that they are not registered is enough. See Swenson v. Engelstad, 626 F.2d 421 (5th Cir.1980)
 With respect to the theory that Dahl's knowing purchase raises the in pari delicto bar, Texas law provides that a plaintiff's knowing participation in the sale of unregistered securities by purchasing makes the plaintiff equally culpable and, therefore, in pari delicto. Ladd v. Knowles, 505 S.W.2d 662, 668 (Tex.Civ.App.1974). The Court in Ladd makes no mention of an additional requirement that the plaintiff must know of the illegality of the transaction. Moreover, the Court has cited no case law which indicates that knowledge of illegality (as opposed to mere knowledge that the securities are unregistered) is necessary. In any event, it is hard for me to believe--on this record--that a sophisticated investor such as Dahl did not know of the illegality of selling unregistered securities. In fact, each investment letter-contract, which Dahl helped the other purchasers complete, contained language expressly indicating that the securities were not registered because of the expected availability of a limited offering exemption from registration. Knowledge of the potential availability of an exemption certainly indicates awareness of the requirements of the securities laws.
 
 
 [2]
 The Court's suggested distinction is further undercut by its own general definition of "seller." According to the Court (and an abundance of Fifth Circuit precedent), a "seller" is (1) one who parts with title to securities in exchange for consideration or (2) one whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place. How strange that one part of the definition expressly requires that a seller receive consideration while any mention of consideration is conspicuously absent form the "substantial factor" element of the definition
 
 
 [3]
 Moreover, the Court's finding that Dahl expected no financial benefit from his efforts has no basis in the record or common sense. More investors means that the investment program receives the requisite amount of financing at a smaller risk to each investor. Therefore, I cannot believe that Dahl was completely free of self-interest when he exhorted the other purchasers to invest
 
 
 [4]
 There are many problems with the majority's reasoning in its effort to apply Henderson instead of Eichler. The source of the problems seems to be the majority's treatment of Pinter's affirmative defense as some generic form of "estoppel theory" rather that as an in pari delicto defense. The issue in this case--the issue which has been briefed and orally argued--is whether the in pari delicto defense bars Dahl's recovery from Pinter. The Court's confusion of the issue is apparent in its argument that Eichler is of limited applicability here because the second part of the Eichler rule substantially mirrors the classic formulation of the in pari delicto doctrine. How does that make Eichler inapplicable? The case presently on appeal is an in pari delicto case and Eichler is therefore directly applicable. Perhaps the majority has been forced to reformulate the issue because Henderson, on which the majority rests its decision, is not an in pari delicto case. As I have emphasized, Henderson does not even discuss "equal culpability," the cornerstone of an in pari delicto defense
 The majority recognizes that Eichler applies when "damages [are sought to] be barred on the grounds of the plaintiff's own culpability," but then erroneously concludes that this is not such a case. This is precisely such a case. Pinter expressly claims in his brief that Dahl's recovery should be barred because of Dahl's own culpability. Elsewhere in the opinion, the Court admits that Dahl was as "culpable" as Pinter as a producing cause of the illegal transaction. This observation places Dahl squarely within the Eichler formulation of the in pari delicto doctrine. Under Eichler, the first element of the in pari delicto defense is that the plaintiff must bear "at least substantially equal responsibility for the violations he seeks to redress." 472 U.S. at ----, 105 S.Ct. at 2629, 86 L.Ed.2d at 224. Dahl bears at least substantially equal responsibility for the securities violations in this case, as the majority recognizes in stating that Dahl was as "culpable" as Pinter as a producing cause of the illegality.
 Finally, any application of in pari delicto principles in this appeal is incomplete without discussing Dahl's conduct as a "seller" of unregistered securities in addition to his conduct as a knowing purchaser. The majority has discussed the "seller" issue only in the context of contribution, a discussion with which I also take issue elsewhere in my opinion.
 In sum, the majority has declined to apply recent Supreme Court precedent which is directly on point--there is absolutely nothing in Eichler which indicates that the general in pari delicto rules espoused therein are limited to a Sec. 10(b) action, as the majority of this panel apparently implies. Instead, this Court finds that the controlling precedent for this in pari delicto appeal is found in a 1972 Fifth Circuit case which is not even an in pari delicto case.
 
 
 [5]
 Barring Dahl's recovery will not let Pinter off the hook because of the presence of the other plaintiffs who have already successfully litigated their claims against Pinter. Thus, allowing the in pari delicto defense to be used in this case results in the best possible outcome--both Dahl and Pinter must "pay"--that is, bear the burden--for the violation for which they are both responsible. The best way to protect the public in this case is to discourage the actions of both Dahl and Pinter as well as future Dahls and Pinters
 Indeed, I would go further. I would hold that Pinter is entitled to contribution from Dahl since Dahl is at least equally culpable for the sale to the other plaintiffs.